Joseph Taylor Gooch (SBN 294282)
Taylor.Gooch@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
50 California Street
San Francisco, California 94111
Telephone: (628) 235-1000

Mary (Mindy) V. Sooter (*pro hac vice*)
Mindy.Sooter@wilmerhale.com
Ravi Deol (*pro hac vice*)
Ravi.Deol@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, Colorado 80202
Telephone: (720) 274-3135

Nina Garcia (*pro hac vice*)
Nina.Garcia@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000

*Attorneys for Plaintiff Comcast Cable Communications, LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| COMCAST CABLE COMMUNICATIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ADAPTIVE SPECTRUM AND SIGNAL ALIGNMENT, INC. and ASSIA SPE, LLC,<br><br>Defendants. | Case No. 5:26-cv-10691-EKL<br><br>**AMENDED COMPLAINT FOR DECLARATORY JUDGMENT OF PATENT NONINFRINGEMENT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Comcast Cable Communications, LLC ("Plaintiff" or "Comcast") alleges for its Complaint against Defendants Adaptive Spectrum and Signal Alignment, Inc. ("ASSIA, Inc.") and ASSIA SPE, LLC ("ASSIA SPE") (collectively, "Defendants" or "ASSIA") as follows:

## NATURE OF THE ACTION

1. This action arises under 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

2. Comcast brings this action for a declaration that it does not infringe and has not infringed any claim of Defendants' U.S. Patent Nos. 9,967,757 (the "'757 patent"), 9,860,111 (the "'111 patent"), 10,848,398 (the "'398 patent"), 11,770,313 (the "'313 patent"), 11,050,654 (the "'654 patent"), 11,477,108 (the "'108 patent"), and 7,809,996 (the "'996 patent") (collectively "the ASSIA Patents").

## PARTIES

3. Comcast Cable Communications, LLC is a Limited Liability Company organized and existing under the laws of the State of Delaware with its principal place of business in Philadelphia, Pennsylvania. Comcast is a leading provider of cable and streaming television, internet, telephone, wireless mobile, and home security services to residential and business customers, including in this judicial district. Comcast has substantial operations in the Northern District of California related to the products and services accused by ASSIA. Among other things, Comcast maintains a significant corporate presence in the San Jose Division, including in Santa Clara County and the cities of San Jose and Sunnyvale, through corporate offices, retail locations, and engineering facilities staffed by engineers whose work involves the design, development, testing, operation, maintenance, and support of one or more of the accused products and services. *See, e.g.*, https://comcastadvertising.com/locations/; Comcast Expands Silicon Valley Innovation Center | Comcast Corporation; https://www.xfinity.com/local/ca/san-jose; https://www.xfinity.com/local/ca/santa-clara; https://www.xfinity.com/local/ca/sunnyvale; https://www.xfinity.com/local/ca/cupertino; https://www.xfinity.com/local/ca/milpitas; https://www.xfinity.com/local/ca/palo-alto. Comcast also provides and markets one or more of the accused products and services to residential and business customers throughout Santa Clara County.

4. On information and belief, Adaptive Spectrum and Signal Alignment, Inc. is a California corporation with its headquarters and principal place of business located at 303 Twin Dolphin Drive, Suite 600, Redwood City, California 94065.

5. On information and belief, ASSIA SPE, LLC is a Delaware limited liability corporation with an address care of its registered agent, Harbor Business Compliance Corporation, 2915 Ogletown Road, Newark, DE 19713. On information and belief, ASSIA SPE has a principal place of business at 303 Twin Dolphin Drive, Suite 600, Redwood City, California 94065.

6. On information and belief, ASSIA, Inc. and ASSIA SPE are related entities that share common management and executive leadership and operate in coordination with respect to ASSIA's patent portfolio, including the enforcement of the ASSIA Patents, such that notice of this lawsuit to ASSIA, Inc. provided simultaneous notice of this lawsuit to ASSIA SPE. On information and belief, Dr. John Cioffi is the founder and CEO of both ASSIA entities, and resides in California. On information and belief, Ethan Andelman is the General Counsel of both ASSIA entities, and is located in California. On information and belief, both ASSIA entities have the same principal place of business at 303 Twin Dolphin Drive, Suite 600, Redwood City, California 94065. On information and belief, ASSIA Inc. is the sole member of ASSIA SPE.

## JURISDICTION AND VENUE

7. This Court has personal jurisdiction over ASSIA. On information and belief, ASSIA's office and principal place of business is located within this District. In addition, the Court has personal jurisdiction over ASSIA because it has established minimum contacts with this forum, including by sending demand correspondence to Comcast from this District.

8. Venue is proper in this jurisdiction under 28 U.S.C. §§ 1391(b) and (c) because a substantial part of the events giving rise to Comcast's claims occurred in this District and ASSIA, Inc. resides in this District for venue purposes.

9. This Court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a) because Comcast's claims arise under the patent laws of the United States,

35 U.S.C. § 1, *et seq*., and under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. As explained below, an immediate and substantial controversy exists between Comcast and ASSIA with respect to whether the ASSIA Patents cover Comcast's activities due to: (1) ASSIA's communications with Comcast asserting the ASSIA Patents, and (2) ASSIA, Inc.'s pattern of intellectual property litigation against telecommunication companies similar to Comcast.

10. In pre-suit communications, ASSIA, Inc., through ASSIA CEO John Cioffi and CTO Peter Chow, has accused Comcast of infringing particular claims of the ASSIA Patents based on the purported operation and capabilities of a variety of Comcast's products and services, which ASSIA has described as including Comcast's "Xfinity cable products which use DOCSIS 3.1," "home internet products which perform remote monitoring and troubleshooting and provide alternate connectivity when the primary connection is unavailable," "home internet products which utilize home wireless mesh," "home internet products which perform cloud based remote management," "Xfinity mobile app which gathers broadband and Wi-Fi topology," "home internet products which perform cloud based remote management," "home internet products which perform LAN and WAN monitoring and optimization," and "other products and services with the same or substantially similar functionality." Exhibit 1 at 1-2.

11. ASSIA, through Mr. Chow, sent by U.S. mail a letter dated August 20, 2026, from an address in this District directed to Brian Roberts, the chairman and CEO of Comcast Corporation. In the letter, ASSIA accuses Comcast of infringing each of the ASSIA patents. A true and accurate copy of the August 20 letter is attached as Exhibit 1. In the August 20 letter, ASSIA states that it "believes that [Comcast's] products and services use technologies covered by, and infringe, the ASSIA patents[.]" *Id*. at 1. ASSIA provides no support for its infringement allegations beyond a generic reference to "publicly available information" which ASSIA does not identify with any specificity. *Id.*

12. ASSIA's August 20 letter represented that ASSIA, Inc. owned all seven ASSIA Patents and offered Comcast a license to those patents from ASSIA, Inc. Dkt. 1-1 at 1-2.

Despite that representation, ASSIA informed Comcast on October 24, 2026, that ASSIA SPE rather than ASSIA, Inc., owns the '757 and '111 patents. Exhibit 12.

13. ASSIA's August 20 letter further states that several companies have already licensed patents in ASSIA's portfolio, and suggests Comcast discuss a license to cover the Comcast products and services ASSIA alleges infringe. *Id.*

14. On September 3, 2026, ASSIA's CEO John Cioffi emailed Thomas Reid, chief legal officer of Comcast Corporation, from an "@stanford.edu" email address. Exhibit 2. Mr. Cioffi wrote that he "would hope to schedule a call/videoconference with [Mr. Reid] where [Mr. Cioffi] could introduce [him]self better and then proceed with [his] inquiry upon which [Mr. Reid] may be able to correspond further." *Id.*

15. Mr. Cioffi contacted Mr. Reid by telephone on September 8, 2026. During the call, Mr. Cioffi revealed that his purpose in contacting Mr. Reid was to discuss the ASSIA Patents identified in ASSIA's August 20 letter, which neither Mr. Reid nor anyone in Comcast's legal department had received as of Mr. Cioffi's September 8 outreach. Mr. Reid stated that he was unaware of any correspondence from ASSIA and asked that Mr. Cioffi provide it. During their discussion, Mr. Cioffi did not provide Mr. Reid assurances of non-suit. Indeed, when Mr. Reid asked Mr. Cioffi whether the purpose of the phone call was to enter a transaction or litigation, Mr. Cioffi did not answer either way and failed to deny that litigation was, in fact, the purpose.

16. On September 10, 2026, Mr. Cioffi sent an email to Mr. Reid using, for the first time, his "@assia-inc.com" account and made a point of noting that to Mr. Reid, stating "I have changed to my ASSIA email address, which I hope you will note as this progressed from the Stanford/Edinburgh introduction to our discussion." Exhibit 2. In his September 10 email, Mr. Cioffi attached ASSIA's August 20 letter and, for the first time, a nondisclosure agreement that was not previously referenced in the August 20 letter or discussed during the September 8 call. Mr. Cioffi also stated that ASSIA's general counsel Ethan Andelman was copied on the September 10 email. On information and belief, Mr. Andelman is licensed to practice law in the state of California, including in this District.

17. ASSIA's proposed Mutual Nondisclosure Agreement ("NDA") confirms that it is contemplating imminent litigation against Comcast. Exhibit 11. In its NDA—which ASSIA did not negotiate with Comcast—ASSIA explicitly discusses a patent litigation action against Comcast, and proposes a six-month "standstill" period in which it offers to refrain from suing Comcast *if and only if* Comcast agreed to all of ASSIA's terms, including strict confidentiality provisions prohibiting Comcast from publicly disclosing even that it was engaging in discussions with ASSIA, and from challenging any of ASSIA's patents anywhere in the world, including at the U.S. Patent Office. ASSIA's explicit discussion of its contemplated patent infringement litigation against Comcast and its conditional offer to refrain from filing suit *if and only if* Comcast agreed to restrictive, unnegotiated terms is a clear confirmation of Comcast's reasonable belief of imminent litigation by ASSIA.

18. Accordingly, ASSIA's communications with Comcast have created a substantial and immediate controversy concerning whether Comcast products and services infringe or have infringed the ASSIA Patents.

19. ASSIA, Inc.'s history of patent infringement litigation against other telecommunication companies also supports Comcast's reasonable apprehension of imminent suit.

20. On February 21, 2024, ASSIA, Inc. filed a complaint against Charter Communications, Inc., Charter Communications Holding Company, LLC, Charter Communications Operating, LLC, and Spectrum Management Holding Company, LLC (collectively, "Charter Communications") in the Eastern District of Texas and alleging infringement of four of the seven ASSIA Patents identified in ASSIA's August 20 letter to Comcast: the '996, '398, '654, and '108 patents. *Adaptive Spectrum and Signal Alignment, Inc. v. Charter Comm's, Inc. et al.*, No. 2:24-CV-00124 (E.D. Tex.), Dkt. 1. ASSIA, Inc. later amended its complaint to assert the '313 patent, which is also identified in the August 20 letter to Comcast. *Id.* at Dkt. 24. On information and belief, Charter Communications, like Comcast, provides internet, mobile, video, and voice services to residential and business customers.

21. On July 7, 2026, ASSIA, Inc. and Charter Communications filed a joint motion to stay all case deadlines and notice of settlement in principle. *Id.* at Dkt. 381. On August 6, the parties filed a joint motion to extend stay of all deadlines. *Id.* at Dkt. 386. Just two weeks later, on August 20, 2026, ASSIA sent its demand letter to Comcast.

22. On January 19, 2024, ASSIA, Inc. filed a complaint against AT&T Communications LLC, AT&T Enterprises, LLC f/k/a AT&T Corp., AT&T Inc., AT&T Mobility LLC, AT&T Mobility II LLC, and AT&T Services, Inc. (collectively "AT&T") in the Eastern District of Texas, alleging infringement of four patents that ASSIA, Inc. claimed "relate to various improvements in DSL and other wireline technology." *Adaptive Spectrum and Signal Alignment, Inc. v. AT&T Inc. et al.*, No. 2:24-cv-29 (E.D. Tex.), Dkt. 1, ¶ 34. On information and belief, AT&T, like Comcast, provides internet, mobile, and voice services to residential and business customers.

23. Based on ASSIA's communications with Comcast together with ASSIA, Inc.'s pattern of litigation against other telecommunications companies, Comcast has a reasonable apprehension of imminent suit.

24. Comcast filed its original declaratory judgment complaint on September 18, 2026. Five days later, on September 23, 2026, Comcast's reasonable apprehension of imminent suit was confirmed when ASSIA filed suit against Comcast Cable Communications, LLC, Communications Management, LLC, Comcast Corporation, and Comcast of Houston, LLC in the United States District Court of the Eastern District of Texas, alleging infringement of the same seven ASSIA Patents against the same products at issue in this declaratory judgment action. *See Adaptive Spectrum and Signal Alignment, Inc., et al. v. Comcast Cable Commc'ns, LLC, et al.*, No. 2:26-cv-00868 (E.D. Tex. Sept. 23, 2026).

25. Comcast, directly and through operating subsidiaries, has operated, marketed, and/or sold one or more of the accused products and services, and will continue to operate, market, and/or sell one or more of the accused products and services in various markets across the United States, including in this District. For example, Comcast provides broadband internet

and cable services in this District, including the San Francisco Bay Area and surrounding regions.

26. Given this substantial and immediate controversy, Comcast seeks declaratory relief from this Court concerning its noninfringement of the ASSIA Patents.

## THE ASSIA PATENTS

**U.S. Patent No. 9,967,757**

27. The ’757 patent is titled “Systems, methods and apparatuses for implementing distributed wireless data sharing and control systems.” The ’757 patent states that it was issued to Ardavan Maleki Tehrani of Menlo Park, California, Kenneth J. Kerpez of Long Valley, New Jersey, and Mung Chiang of Princeton, New Jersey. A true and correct copy of the ’757 patent is attached as Exhibit 3.

28. The original assignee of the ’757 patent identified on the patent’s face is Adaptive Spectrum and Signal Alignment, Inc. of Redwood City, California. On information and belief, ASSIA SPE claims to be the current owner by assignment of all right, title, and interest in the ’757 patent. Exhibit 12.

**U.S. Patent No. 9,860,111**

29. The ’111 patent is titled “Method and apparatus for diagnosing and configuring a broadband connection via an alternate communication path.” The ’111 patent states that it was issued to Kenneth J. Kerpez of Long Valley, New Jersey, Stefano Galli of New York, New York, George Ginis of San Mateo, California, Peter J. Silverman of Evanston, Illinois, and Mehdi Mohseni of Menlo Park, California. A true and correct copy of the ’111 patent is attached as Exhibit 4.

30. The original assignee of the ’111 patent identified on the patent’s face is Adaptive Spectrum and Signal Alignment, Inc. of Redwood City, California. On information and belief, ASSIA SPE claims to be the current owner by assignment of all right, title, and interest in the ’111 patent. Exhibit 12.

**U.S. Patent No. 10,848,398**

31. The ’398 patent is titled “Method, apparatus, and system for optimizing performance of a communication unit by a remote server.” The ’398 patent states that it was issued to Wonjong Rhee of Seoul, Korea. A true and correct copy of the ’398 patent is attached as Exhibit 5.

32. The original assignee of the ’398 patent identified on the patent’s face is ASSIA SPE, LLC of Wilmington, DE. On information and belief, ASSIA SPE, LLC assigned all right, title, and interest in the ’398 patent to ASSIA on January 18, 2024. A true and correct copy of the assignment is attached as Exhibit 10. On information and belief, ASSIA, Inc. claims to be the current owner by assignment of all right, title, and interest in the ’398 patent.

**U.S. Patent No. 11,770,313**

33. The ’313 patent is titled “Method, apparatus, and system for optimizing performance of a communication unit by a remote server.” The ’313 patent states that it was issued to Wonjong Rhee of San Francisco, California. A true and correct copy of the ’313 patent is attached as Exhibit 6.

34. The original assignee of the ’313 patent identified on the patent’s face is ASSIA SPE, LLC of Wilmington, DE. On information and belief, ASSIA SPE, LLC assigned all right, title, and interest in the ’313 patent to ASSIA on January 18, 2024. A true and correct copy of the assignment is attached as Exhibit 10. On information and belief, ASSIA, Inc. claims to be the current owner by assignment of all right, title, and interest in the ’313 patent.

**U.S. Patent No. 11,050,654**

35. The ’654 patent is titled “Method and system for using a downloadable agent for a communication system, device, or link.” The ’654 patent states that it was issued to Leonardo Dagum of Redwood City, California, Philip Bednarz of Palo Alto, California, Marc Goldburg of Redwood City, California, Ardavan Maleki Tehrani of Menlo Park, California, and Wonjong

Rhee of San Francisco, California. A true and correct copy of the ’654 patent is attached as Exhibit 7.

36. The original assignee of the ’654 patent identified on the patent’s face is ASSIA SPE, LLC of Wilmington, DE. On information and belief, ASSIA SPE, LLC assigned all right, title, and interest in the ’654 patent to ASSIA on January 18, 2024. A true and correct copy of the assignment is attached as Exhibit 10. On information and belief, ASSIA, Inc. claims to be the current owner by assignment of all right, title, and interest in the ’654 patent.

**U.S. Patent No. 11,477,108**

37. The ’108 patent is titled “Systems and methods for jointly optimizing WAN and LAN network communications.” The ’108 patent states that it was issued to Peter Chow of Los Altos, California, Wonjong Rhee of San Francisco, California, Ardavan Maleki Tehrani of Atherton, California, and Marc Goldburg of Redwood City, California. A true and correct copy of the ’108 patent is attached as Exhibit 8.

38. The original assignee of the ’108 patent identified on the patent’s face is ASSIA SPE, LLC of Wilmington, DE. On information and belief, ASSIA SPE, LLC assigned all right, title, and interest in the ’108 patent to ASSIA on January 18, 2024. A true and correct copy of the assignment is attached as Exhibit 10. On information and belief, ASSIA, Inc. claims to be the current owner by assignment of all right, title, and interest in the ’108 patent.

**U.S. Patent No. 7,809,996**

39. The ’996 patent is titled “Adaptive FEC Codeword Management.” A true and correct copy of the ’996 patent is attached as Exhibit 9.

40. The original assignee of the ’996 patent identified on the patent’s face is Adaptive Spectrum and Signal Alignment, Inc. of Redwood City, California. On information and belief, ASSIA, Inc. claims to be the current owner by assignment of all right, title, and interest in the ’996 patent.

## DIVISIONAL ASSIGNMENT

41. Pursuant to Civil Local Rule 3-5(b), Comcast states that it maintains a corporate office in San Jose County, and operates, markets, and/or sells one or more of the products and

services ASSIA accuses of infringement to residential and business customers in San Jose County.

**CLAIMS FOR RELIEF**

**COUNT I**

**Declaratory Judgment of Noninfringement of U.S. Patent No. 9,967,757**

42. The preceding paragraphs are incorporated herein by reference.

43. Comcast has not infringed and does not infringe any claim of the ’757 patent, either directly or indirectly, literally or under the doctrine of equivalents. By way of example, and without limitation, the accused products and services do not meet at least the claim 1 limitation of “analyzing the collected measurements of the wireless environment at the first wireless node and the state information received from the second wireless node to determine one or more modifications to the current configuration of the first wireless node.” For example, Comcast’s home internet products and services, including those which utilize home wireless mesh, do not meet this limitation because no wireless node implements an algorithm or other process to analyze both locally collected wireless-environment measurements and state information received from another wireless node to determine modifications to its current configuration.

44. As a further example, Comcast’s accused products and services do not perform “communicating first node state information to the second wireless node” because they do not share any state information between wireless nodes.

45. As set forth above, an actual controversy exists between Comcast and ASSIA with respect to infringement of the ’757 patent and this controversy is likely to continue. Accordingly, Comcast desires a judicial determination and declaration of the respective rights and duties of the parties with respect to the ’757 patent.

46. Such a declaration is necessary and appropriate at this time in order that the parties may ascertain their respective rights and duties with respect to the matters set forth above.

## COUNT II

**Declaratory Judgment of Noninfringement of U.S. Patent No. 9,860,111**

47. The preceding paragraphs are incorporated herein by reference.

48. Comcast has not infringed and does not infringe any claim of the '111 patent, either directly or indirectly, literally or under the doctrine of equivalents. By way of example, and without limitation, the accused products and services do not meet at least the claim 1 limitation of "the alternate communications device to receive from the broadband communication network management device, via the alternate communication path, new diagnostic information for use at the broadband CPE to fix a fault or improve performance of the broadband connection or new configuration information about the broadband connection, responsive to the broadband communication network management device performing the analysis." For example, Comcast's home internet products and services do not meet this limitation because they do not use any received diagnostic information at a broadband CPE to fix a fault or improve a primary broadband connection. Comcast's home internet products and services also do not receive any new configuration information at the broadband CPE for changing the primary broadband connection.

49. As set forth above, an actual controversy exists between Comcast and ASSIA with respect to infringement of the '111 patent and this controversy is likely to continue. Accordingly, Comcast desires a judicial determination and declaration of the respective rights and duties of the parties with respect to the '111 patent.

50. Such a declaration is necessary and appropriate at this time in order that the parties may ascertain their respective rights and duties with respect to the matters set forth above.

## COUNT III

**Declaratory Judgment of Noninfringement of U.S. Patent No. 10,848,398**

51. The preceding paragraphs are incorporated herein by reference.

52. Comcast has not infringed and does not infringe any claim of the '398 patent, either directly or indirectly, literally or under the doctrine of equivalents. By way of example,

and without limitation, the accused products and services do not meet at least the claim 1 limitation of "based on the processed data, determining a policy for at least one of the two or more communication units." For example, Comcast's home internet products and services do not meet this limitation because they do not communicate a "policy" "based on processed data" to equipment within a subscriber's network. ASSIA, Inc. has previously distinguished commands or controls from the claimed policy, taking the position that "a policy to generate commands or 'controls' to instruct an AP to perform a particular action" "differs from the communication of a policy as recited in the '398 patent, which enables the AP to use rules and conditions to make decisions and take actions (e.g., whether to implement a particular algorithm)." *Charter Comm's, Inc. v. Adaptive Spectrum and Signal Alignment, Inc.*, IPR2025-00012, Patent Owner Preliminary Response at 24 (Feb. 19, 2025). In Comcast's system, access points do not receive policies that enable the access points to use rules and conditions to take actions, such as determining whether to implement particular algorithms.

53. As set forth above, an actual controversy exists between Comcast and ASSIA with respect to infringement of the '398 patent and this controversy is likely to continue. Accordingly, Comcast desires a judicial determination and declaration of the respective rights and duties of the parties with respect to the '398 patent.

54. Such a declaration is necessary and appropriate at this time in order that the parties may ascertain their respective rights and duties with respect to the matters set forth above.

## COUNT IV

### Declaratory Judgment of Noninfringement of U.S. Patent No. 11,770,313

55. The preceding paragraphs are incorporated herein by reference.

56. Comcast has not infringed and does not infringe any claim of the '313 patent, either directly or indirectly, literally or under the doctrine of equivalents. By way of example, and without limitation, the accused products and services do not meet at least the claim 1 limitation of "a processor coupled to the memory, the processor generates at least one policy based at least in part on an analysis of the first and second sets of collected data." For example,

Comcast's home internet products and services do not meet this limitation because they do not communicate a "policy" "based at least in part on an analysis of the first and second sets of collected data" to equipment within a subscriber's network. ASSIA, Inc. has previously distinguished commands or controls from the claimed policy, taking the position that "a policy to generate commands or 'controls' to instruct an AP to perform a particular action" "differs from the communication of a policy as recited in the '313 patent, which enables the AP to use rules and conditions to make decisions and take actions (e.g., whether to implement a particular algorithm)." *Charter Comm's, Inc. v. Adaptive Spectrum and Signal Alignment, Inc.*, IPR2025-00013, Patent Owner Preliminary Response at 25 (Feb. 19, 2025). In Comcast's system, access points do not receive policies that enable the access points to use rules or conditions to take action, such as determining whether to implement particular algorithms.

57. As set forth above, an actual controversy exists between Comcast and ASSIA with respect to infringement of the '313 patent and this controversy is likely to continue. Accordingly, Comcast desires a judicial determination and declaration of the respective rights and duties of the parties with respect to the '313 patent.

58. Such a declaration is necessary and appropriate at this time in order that the parties may ascertain their respective rights and duties with respect to the matters set forth above.

## COUNT V

**Declaratory Judgment of Noninfringement of U.S. Patent No. 11,050,654**

59. The preceding paragraphs are incorporated herein by reference.

60. Comcast has not infringed and does not infringe any claim of the '654 patent, either directly or indirectly, literally or under the doctrine of equivalents. By way of example, and without limitation, the accused products and services do not meet at least the claim 1 limitations of (1) collecting, transmitting, storing, or analyzing "WAN performance information," and (2) "sending an on-demand change request associated with at least one of throughput, or latency." For example, Comcast's Xfinity mobile app does not meet these limitations because it does not collect, store, analyze, or transmit "WAN performance

information," for purposes of generating or sending an on-demand change request associated with throughput or latency. Likewise, when a subscriber performs an operation through the Xfinity mobile app, the app does not generate or send an on-demand change request based on the operation results or any alleged WAN performance information. Results of the operation are not used as an input to trigger any on-demand change request or any modification of network throughput or latency.

61. As a further example, Comcast's accused products and services do not include a single "machine" that stores and analyzes "WAN performance information," reports the analysis result, and sends an on-demand change request, as required by the asserted claims. No single machine performs all the recited steps, including storing and analyzing WAN performance information, reporting the analysis result, and sending an on-demand change request associated with throughput or latency.

62. As set forth above, an actual controversy exists between Comcast and ASSIA with respect to infringement of the '654 patent and this controversy is likely to continue. Accordingly, Comcast desires a judicial determination and declaration of the respective rights and duties of the parties with respect to the '654 patent.

63. Such a declaration is necessary and appropriate at this time in order that the parties may ascertain their respective rights and duties with respect to the matters set forth above.

## COUNT VI

### Declaratory Judgment of Noninfringement of U.S. Patent No. 11,477,108

64. The preceding paragraphs are incorporated herein by reference.

65. Comcast has not infringed and does not infringe any claim of the '108 patent, either directly or indirectly, literally or under the doctrine of equivalents. By way of example, and without limitation, the accused products and services do not meet at least the claim 1 limitation of "identifying one or more operational conditions within the WAN in a different communication layer from the one or more communication layers on the LAN by analyzing at least the collected LAN information." For example, Comcast's home internet products and

services do not meet this limitation because they do not identify WAN operational conditions by analyzing collected LAN information. Further, Comcast systems do not use collected information from LAN devices as an input to determine WAN operational conditions.

66. As set forth above, an actual controversy exists between Comcast and ASSIA with respect to infringement of the ’108 patent and this controversy is likely to continue. Accordingly, Comcast desires a judicial determination and declaration of the respective rights and duties of the parties with respect to the ’108 patent.

67. Such a declaration is necessary and appropriate at this time in order that the parties may ascertain their respective rights and duties with respect to the matters set forth above.

## COUNT VII

### Declaratory Judgment of Noninfringement of U.S. Patent No. 7,809,996

68. The preceding paragraphs are incorporated herein by reference.

69. Comcast has not infringed any claim of the ’996 patent, either directly or indirectly, literally or under the doctrine of equivalents. By way of example, and without limitation, the accused products and services do not meet at least the claim 20 limitation of “a controller coupled with the transmitter to receive the input signal from the transmission error value monitor and to further generate a retransmission overhead control signal for the transmitter in response to the input signal.” For example, Comcast’s Xfinity cable products and services do not meet this limitation because they do not generate any retransmission overhead control signal in response to measured transmission error values and do not retry transmission in response to monitored transmission conditions. To the extent Comcast’s systems adjust profile settings, they do so in other ways, that do not meet this claim requirement.

70. As set forth above, an actual controversy exists between Comcast and ASSIA with respect to infringement of the ’996 patent and this controversy is likely to continue. Accordingly, Comcast desires a judicial determination and declaration of the respective rights and duties of the parties with respect to the ’996 patent.

71. Such a declaration is necessary and appropriate at this time in order that the parties may ascertain their respective rights and duties with respect to the matters set forth above.

**PRAYER FOR RELIEF**

WHEREFORE, Comcast prays that judgment be entered in its favor and requests:

1. A judgment and declaration that Comcast has not infringed and does not infringe in any manner any claim of the ASSIA Patents, directly, contributorily, or by inducement, and has not otherwise infringed or violated any rights of Defendants;

2. An injunction against Defendants and their affiliates, subsidiaries, assigns, employees, agents, and/or anyone acting in privity or concert with Defendants from charging infringement or instituting any legal action for infringement of the ASSIA Patents against Comcast or anyone acting in privity with Comcast, including the divisions, successors, assigns, agents, suppliers, manufacturers, contractors and customers of Comcast;

3. A judgment and declaration that this is an exceptional case within the meaning of 35 U.S.C. § 285, entitling Comcast to an award of its reasonable attorneys' fees, expenses, and costs in this action;

4. An award to Comcast of its costs and reasonable expenses to the fullest extent permitted by law;

5. An award of such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b) and Civil Local Rule 3-6(a), Comcast hereby demands a trial by jury on all issues so triable.

Dated: October 28, 2026

Respectfully submitted,

**WILMER CUTLER PICKERING HALE AND DORR LLP**

By: /s/ Taylor Gooch
Joseph Taylor Gooch (SBN 294282)
Taylor.Gooch@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
50 California Street
San Francisco, California 94111
Telephone: (628) 235-1000

Mary (Mindy) V. Sooter (*pro hac vice*)
Mindy.Sooter@wilmerhale.com
Ravi Deol (*pro hac vice*)
Ravi.Deol@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
1225 Seventeenth Street, Suite 2600
Denver, Colorado 80202
Telephone: (720) 274-3135

Nina Garcia (*pro hac vice*)
Nina.Garcia@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000

*Attorneys for Plaintiff Comcast Cable Communications, LLC*